**REED et al. v. FICHENCORD et al.**

No. 11297—Opinion Filed Oct. 23, 1923.

(Syllabus.)

**1. Accord and Satisfaction — Insufficiency as Defense to Action for Damages.**

In an action for damages sustained on account of trespass and wrongful taking of personal property, the payment by the defendants to the plaintiffs of a sum of money representing the net amount remaining in the hands of the defendants from the operation of the property during the time it was in the possession of the defendants and the acceptance of such sum by the plaintiffs does not constitute a defense to the action for the wrongful trespass unless such sum was accepted by the plaintiffs in satisfaction or release of their right of action for the wrongful trespass.

**2. Principal and Agent – Allegation of Agency—Denial Under Oath.**

An express averment of agency is not required in an answer in order to require a denial thereof under oath, if the facts constituting the agency are set forth in the answer; but, if a denial under oath is required, the facts averred must be of such nature and character that agency follows as a conclusion of law.

**3. Damages—Exemplary Damages—Torts.**

To authorize judgment for exemplary damage in an action sounding in tort, proof must show some element of fraud, malice, or oppression.

**4. Same—Question for Jury.**

Where there is some evidence reasonably tending to prove the issue of malice or oppression in the commission of a tort, it is the duty of the trial court to submit that question to the jury.

**5. Appeal and Error—Excessive Damages —Cure by Remittitur.**

Where it appears that a judgment was rendered for $1,250 actual damages, and the trial court required a remittitur of $250 because the verdict was excessive, and where there is nothing else in the record to show that the verdict was rendered under the influence of passion and prejudice and the sum of $250 is remitted by the plaintiffs according to the order of the trial court, the judgment will not be disturbed on the ground that the verdict was rendered through the influence of passion and prejudice.

Error from Superior Court, Muskogee County; Guy F. Nelson, Judge.

Action by H. F. Fichencord et al. against P. E. Reed et al. Judgment for plaintiffs, and defendants bring error. Affirmed.

N. A. Gibson, J. L. Hull, and T. L. Gibson, for plaintiffs in error.

Geo. S. Ramsey, Edgar A. de Meules, Malcolm E. Rosser, and Villard Martin, for defendants in error.

COCHRAN, J. This action was commenced by the defendants in error against the plaintiffs in error to recover damages sustained by the defendants in error for the wrongful taking of personal property

of the defendants in error by the plaintiffs in error. The parties will hereinafter be referred to as plaintiffs and defendants, as they appeared in the trial court.

It is first contended by the defendants that the court should have instructed a verdict for the defendants because the defendants tendered to the plaintiffs the sum of $49.50, which represented the net earnings from the property which the defendants had wrongfully taken while the property was under the control of the defendants, and that this sum had been accepted by the plaintiffs. It is their contention that the acceptance of this sum waived the tort of the original taking and ratified the use of the property by the defendants. Numerous authorities are cited by the defendants which deal with actions of trover, but those cases have no application here, because the plaintiffs' action was one for trespass for the wrongful taking of the property and they were entitled to recover for the detriment occasioned thereby. The trespass having been committed, the acts subsequent thereto not in satisfaction or release of the right of action are not a defense. In order for the payment of this sum to constitute a defense to the action, it must have been either sufficient to pay the damages sustained or it must have been accepted by the plaintiffs by way of accord and satisfaction. It is not contended by the defendants that it was paid for either of these purposes and was therefore no defense.

Defendants' second proposition involves the correctness of certain instructions given to the jury as to the character of the original taking and the agency of John Terry. By instruction No. 4, the jury was told that the acts of the defendants in taking the machine from the place where the plaintiffs left it was unlawful and wrongful. By instruction No. 7, the jury was told that Terry had no authority to deliver the machine to defendants, and if he did so even voluntarily, the plaintiffs would not be bound thereby. By instruction No. 8, the jury was told that in determining whether defendants were liable for actual damages done to the machine while in their possession it was immaterial whether actual force was used in its taking. These instructions correctly state the law applicable to the facts shown in the record. There was no allegation or proof of agency on the part of Terry.

The defendants contend that because the plaintiffs did not deny under oath the authority of Terry to deliver the machine to them his authority must be taken as con-

fessed. There is no allegation of agency in the answer of the defendants and, hence, no denial under oath was required. In order to require a denial under oath, it is not necessary that an express averment of agency be contained in the pleading, if the facts constituting the agency are set forth, but such facts must be of such a nature and character that agency follows as a conclusion of law. No averments of this character appear in the answer. Instruction No. 8 correctly stated the law under the facts as shown in the record.

It is next contended by the defendants that the trial court erred in submitting to the jury the question of exemplary or punitive damages. This court has announced the rule in the following language:

"Exemplary damages are imposed by the law on the theory of punishment to the offender, for the general benefit of society, and as a restraint to the transgressor, and are allowed only in cases where malice, fraud, oppression, or gross negligence enter into the cause of action." Rhyne v. Turley, 37 Okla. 159, 131 Pac. 695.

This court has also held that the question of exemplary damages, where properly pleaded, is a question of fact for the jury, if there is some evidence reasonably tending to support that issue, and that in such circumstances the trial court should submit the question to the jury. Williams v. Baldrey, 52 Okla. 126, 152 Pac. 814. In the instant case, there is evidence reasonably tending to show malice and also oppression. It is impossible to say from a reading of the record in this case that there is no evidence reasonably tending to support this position. Under such circumstances, it was not only proper for the trial court to submit that question to the jury, but it was his duty to do so.

Defendants next complain of the action of the trial court in refusing to give defendants' requested instruction No. 7. This instruction was a mere statement of an abstract proposition of law, and the legal proposition contained therein was embraced in instruction No. 5 of the instructions given by the court. This was sufficient. St. L. & S .F. R. Co. v. Clampitt, 55 Okla. 686, 154 Pac. 40; Fulsom-Morris Coal & Mining Co. v. Mitchell, 37 Okla. 575, 132 Pac. 1103; Scott v. Vulcan Iron Works Co., 31 Okla. 334, 122 Pac. 186.

Defendants next complain that the verdict of the jury was excessive and appears to have been given under the influence of prejudice and passion. The jury returned a verdict for $1,250 actual damages, and the

trial court required a remittitur of $250. Defendants argue that the verdict for $1,250 actual damages was so excessive as to show it to have been returned under prejudice and passion, and this vice inheres in the verdict after remittitur filed. There was sufficient testimony to authorize a verdict of $1,000 for the actual damages to the engine and thresher while under the control of the defendants. The jury evidently through an error in calculation returned a verdict of $1,250 actual damages. Upon hearing on the motion for new trial, the court required the plaintiffs to remit the sum of $250 from the verdict for actual damages to conform to the proof, and, upon this being done, the motion for new trial was overruled and judgment entered. This cured the vice of the verdict as to actual damages. Haskell Nat. Bank v. Stewart, 76 Okla. 58, 184 Pac. 463.

The judgment of the trial court is affirmed.

JOHNSON, C. J., and KENNAMER, NICHOLSON, and HARRISON, JJ., concur. MASON, J., dissents.

MASON, J. (dissenting). Section 5975, Comp. Okla. Stat. 1921, provides as follows:

"In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

Therefore, in order to entitle the plaintiffs to recover exemplary damages in this case, the proof must show some element of fraud, malice, or oppression. As was stated by this court in the case of Sale v. Shipp, 58 Okla. 602, 160 Pac. 502:

"The act which constitutes the cause of action must be actuated by or accompanied with some evil intent, or must be the result of such gross negligence—such disregard of another's rights—as is deemed equivalent to such intent."

And, where there is a want of any of these elements, the damages recoverable are confined to the loss sustained and nothing more. Western Union Tel. Co. v. Reeves, 34 Okla. 469, 126 Pac. 216; Ft. S. & W. Co. v. Ford, 34 Okla. 576, 126 Pac. 745, 41 L. R. A. (N. S.) 745; Williams v. Baldrey, 52 Okla. 126, 152 Pac. 814; Haskell Nat. Bank v. Stewart, 76 Okla. 58, 184 Pac. 463.

Inasmuch as Mr. Justice Cochran, in his statement of the facts in this case, has been very brief, I deem it necessary to go into them more at length, for the purpose of showing that there was no evidence whatever, as I view the case, supporting the verdict of the jury as to exemplary or punitive damages.

The record in the case discloses that the plaintiff, H. F. Fichencord and Blanche Fichencord are husband and wife, and in 1918 were engaged in farming and operating a threshing machine in Wagoner county, Okla.

The record further discloses that the defendants below were citizens of Wagoner county, and during the period covered by the transactions involved were members of or connected with the council of defense and the food administration of Wagoner county, organized to aid in developing and conserving the country's resources under the general war plans inaugurated by the federal government during the war with Germany.

The testimony in this case covers almost 1,000 pages of the record, but it has been carefully examined with the view of reaching a just conclusion upon this proposition.

In the first place, it must be admitted that this case is exceptional in many of its aspects, and although unnecessary, as I view the law and the facts, it is the one case where the proverbial exception might with propriety be applied rather than the rule. The occurrences which gave rise to this case transpired at a time of national peril when the resources of the country were being marshaled to the straining point in the effort to make successful the most stupendous governmental undertaking in history. American lives had been treacherously destroyed on the high seas, and American blood had flowed on the battlefields in France. Loyalty in this country was aroused as never before, and the personal equation was often lost sight of in the determination to make the nation a unit in the prosecution of the war. The defendants were engaged in this war work, and the records show that in the effort to increase and speed production of food stuff they took measures similar to those adopted in practically every county of every state in the Union.

The county council of defense, of which they were members, and which was at least a semiofficial organization, having been organized by the authorization of the federal government, prescribed rules for the harvesting, threshing, and distribution of

food crops. Due to their sincerity in their work in this organization, and their patriotism, they probably doubted the good faith and patriotism of those who questioned either the wisdom or the necessity of the regulations of said organization, and to them positive proof of loyalty was acquiescence in the plans suggested by the federal administration.

Whether justifiably so or not, the record discloses that the plaintiffs had evidently aroused suspicions as to their loyalty. The record further discloses that the plaintiff, H. F. Fichencord, had been arrested on two occasions at about that time, once for appearance before the county council of defense for some reason **not clearly** disclosed by the evidence, and the other for appearance before the United States commissioner at Muskogee upon the charge of espionage. There is some evidence, however, tending at least to show that these defendants were responsible for the federal warrant.

The record further discloses that the plaintiffs failed and refused to comply with an order of the county council of defense to thresh all crops in each neighborhood before proceeding to another. As a matter of economy and saving of time, this regulation seems to have been reasonable.

After this refusal on the part of plaintiffs, defendants took charge of the threshing machine during the absence of the plaintiffs and proceeded to thresh the crops of those farmers which the plaintiffs had failed to thresh. The record further discloses that the defendants had the machine in their possession from July 10, to July 24, 1918, and that the net proceeds from its operation were delivered to the plaintiffs.

We think this strongly rebuts any presumption of malice; that defendants believed they had authority to commandeer the machine is amply shown by the testimony. Even though the testimony was sufficient to establish the fact that the defendants were responsible for the arrests of the plaintiff, H. F. Fichencord, yet there is no evidence that would warrant the conclusion that **the taking of the** machine and the arrests were a result of any conspiracy between the defendants to oppress the plaintiffs. Malice and oppression, actual or presumed, must be present in the act made the basis of the action to authorize exemplary damages.

I am of the opinion that there was not sufficient evidence to warrant the trial court in submitting to the jury the question of exemplary damages, and must, therefore, dissent from the majority opinion affirming such action.