JOHNSON, O. J., and KANE, KENNAMER, NICHOLSON, BRANSON, and MASON, JJ., concur.

---

## GUTHRIE MILL & ELEVATOR CO. v. THOMPSON & GIBSON.

No. 10881—Opinion Filed April 17, 1923.

(Syllabus.)

1. **Sales—Breach of Contract to Accept—Measure of Damages.**

Subdivision 2, section 5987, Comp. Stat. 1921, fixes the measure of damages for breach of a buyer's agreement to accept and pay for personal property where the title is not vested in him and where the property has not been resold pursuant to section 7430.

2. **Same—Resale.**

It is not necessary for the seller to make a resale of the property which the buyer has refused to accept and pay for in order to fix the amount of damages under subdivision 2, section 5987, Comp. Stat. 1921; but, in case a resale is made, it is not necessary to follow the procedure provided for the sale of pledged property, and the manner of the sale is within the reasonable discretion of the seller.

3. **Same—Manner and Effect of Resale.**

Where the seller of personal property, on refusal of purchaser to accept, elects to resell the same, it is not in general the duty of the seller to resell immediately or at the contract place for delivery; but it is generally his duty to resell within a reasonable time, and, in the absence of any evidence as to the market value of the goods at the time of the refusal to accept, the price received on resale will be regarded as market value.

Error from District Court, Jefferson County; Cham Jones, Judge.

Action by the Guthrie Mill & Elevator Company against Thompson & Gibson, a partnership, et al. for damages for breach of sale contract. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with directions.

Fred W. Green, for plaintiff in error.

Bridges & Vertrees and Green & Pruet, for defendants in error.

COCHRAN, J. This action was filed by the Guthrie Mill & Elevator Company to re-

cover for failure of defendants in error to accept a shipment of two cars of flour purchased by defendants in error from plaintiff in error. The trial court instructed a verdict for defendants in error, and plaintiff in error has prosecuted this appeal. The parties, will be hereinafter referred to as they appeared in the trial court

There was testimony introduced showing the execution of the contract and a breach thereof by defendants. There was also testimony to support the allegations of damages alleged to have been sustained by plaintiff. The trial court sustained the demurrer to the evidence on the ground that there was no evidence introduced showing that any damages were sustained by reason of the breach of contract. The testimony shows that the flour was to have been delivered to the railroad company at Guthrie, Okla., for transportation to defendants at Sugden, and upon the refusal of the defendants to accept the two cars of flour a resale thereof was made to the Corbey Baking Company of Washington, D. C., the same to be delivered to the railroad company at Guthrie, Okla., for transportation to the purchaser at Washington, D. C. There was testimony tending to show that a request was made by the defendants for an extension of time in which to accept the flour, that this extension was granted, but defendants were advised that unless the shipments were accepted on a certain day a resale would be made on their account, and upon the day fixed, upon refusal to accept, defendants were advised that a resale of the flour for their account would be made, and thereafter the sale was made.

The applicable statute fixing the measure of damages in this case is subdivision 2, section 5987, Comp. Stat. 1921, which is as follows:

"If the property has not been resold in the manner prescribed by section 7430, the excess, if any, of the amount due from the buyer, under the contract over the value to the seller, together with the excess, if any, of the expenses properly incurred in carrying the property to market, over those which would have been incurred for the carriage thereof, if the buyer had accepted it."

It is contended by the defendants that this section of the statute provides the measure of damages only where a sale of the property is made in accordance with section 8201, Comp. Stat. 1921. With this contention we cannot agree. The first subdivision of section 5987, Comp. Stat. 1921. refers to sales made in accordance with the law providing for sales of pledged property, and in such cases the damages would be the difference between the amount due from the buyer under the contract over the net proceeds of the resale, regardless of the amount for which the property was sold at such resale, provided the sale was made in accordance with the statute; but, under the second subdivision of section 5987, which covers damages caused by the breach of the buyer's agreement to accept the property purchased when resale has not been made in accordance with the first subdivision, the measure of the damages is the difference between the amount due from the buyer under the contract over the value to the seller, together with the excess of expenses properly incurred in carrying the property to market over those which would have been incurred for the carriage thereof if the buyer had accepted, and section 6008, Comp. Stat. 1921, provides:

"In estimating damages, the value of property to a seller thereof is deemed to be the price which he could have obtained therefor in the market nearest to the place at which it should have been accepted by the buyer, and at such time after the breach of the contract as would have sufficed, with reasonable diligence, for the seller to effect a resale."

Under the second subdivision of section 5987, Comp. Stat. 1921, it is not necessary that a resale of the property should actually be made in order to fix the amount of the damages, though if the resale is made, it is not necessary that it should be made under the procedure outlined for sale of pledged property. In Gaines Bros. & Co. v. Citizens Bank of Henryetta et al., 84 Okla. 265, 204 Pac. 112, this court held subdivision 2 of section 5987, Comp. Stat. 1921, to be the applicable statute fixing the amount of damages in cases of this kind, and also held that a resale could be made for the purpose of determining the amount of damages, and, relative to the manner of making the sale, used the following language in the second paragraph of the syllabus, to wit:

"A resale of property is but the mere means of determining the precise amount of damages by the breach, while the incidental effect is to satisfy the loss suffered by the vendor to the extent of the proceeds from the resale. The resale may be made at public auction or privately, and, it often happens that the goods can best be sold at private sale; but whether on the one mode or the other, in the absence of any instructions from the buyer, the vendor has the right to exercise his discretion within reasonable bounds, and whether this discretion

is exercised properly and in good faith is a question of fact for the jury."

In 35 Cyc. 597, the rule is stated as follows:

"In the absence of other evidence as to the market price, the price obtained on resale immediately or within a reasonable time after the breach of the contract may be regarded as the market price, and the seller may recover the difference between such price and the contract price. The price obtained on resale is not, however, conclusively the market value, especially where the resale is long after the breach, or in a strange market. It must appear that the seller used due diligence, and made all reasonable efforts to obtain the best price, or that the price obtained was a fair one."

In 35 Cyc. 524, it is said:

: "The seller of goods who, on refusal of the purchaser to accept, elects to resell them at the buyer's risk, is not bound to resell at the contract place for delivery and within the contract time for delivery, and it is not in general the duty of the seller to resell immediately, the most that can be demanded of him being held to be that he shall sell at the earliest practicable moment, but it is generally his duty to resell within a reasonable time, and if he does not, the original buyer is not liable for loss due to the delay; but even if there is delay, in the absence of any evidence as to the market value of the goods at the time of the refusal to accept, the price received on resale will be regarded as the market value."

We are of the opinion that there was ample evidence in the record entitling the plaintiff to have this case submitted to the jury, and that the trial court erred in sustaining demurrer to testimony.

Judgment is reversed, and cause remanded, with directions to grant a new trial.

JOHNSON, C. J., and KANE, KENNAMER, NICHOLSON, BRANSON, and MASON, JJ., concur.